COVINGTON, Judge.
This is an appeal from a judgment in favor of plaintiff, James Patrick Gales, and against defendant, Dresser Industries, Inc. The trial court rendered judgment in favor of plaintiff for partial disability for a maximum of 450 weeks, payable at the rate of $141.00 per week, plus legal interest on the past due weekly payments, from September 24,1980 until paid, as well as plaintiff’s medical expenses, and ordered Dresser to pay for additional surgery as recommended by plaintiff’s physicians; the trial court gave defendant, Dresser, credit for earnings, voluntary payments, and compensation paid after May 30, 1979 and denied plaintiff’s demand for penalties and attorney fees.
The defendant’s appeal contends that the court erred in holding that the plaintiff is in fact disabled and that he was injured in an accident on May 30, 1979, while working for Dresser Industries, Inc.
The plaintiff contends that the trial court correctly determined that he is partially disabled under LSA-R.S. 23:1221(3) and is entitled to the benefits awarded.
The issues on appeal are:
1. Was Gales’ disability caused by an accident on May 30, 1979, while he was working at Dresser Industries?
2. Is Gales in fact disabled?
The plaintiff, a liquid mud engineer and dispatcher, was working for Dresser Industries on May 30, 1979, the date of the accident. His normal dutiés including loading and unloading 50 pound and 100 pound sacks of dry drilling mud. On that date, he was cleaning up his living quarters at Dresser when a pile of beds collapsed and struck his left hand. Plaintiff reported the *226 accident to his supervisor who sent him to Dr. Cenac, who determined that Gales’ wrist was fractured. Dr. Cenac applied a cast which Gales wore for about 2 months. When the cast was removed, plaintiff complained of pain, and the x-rays revealed that the fracture had not healed. Dr. Ce-nac performed a bone graft on August 6, 1979 to aid the healing process. Gales was re-examined on September 17, 1979, at which time Dr. Cenac estimated his disability would last six months. On October 5, 1979, Dr. Cenac wrote to defendant’s compensation adjusters that Gales' condition was improving, but he could be expected to have a 20-40% impairment of the wrist and hand as a whole, depending on the healing of the navicular fracture. At that time, Dr. Cenac estimated that active treatment would be necessary for 6-9 months more. On November 30, 1979, Dr. Cenac again wrote the adjusters to say that there was progressive union of the graft site, however there was incomplete union across the entire navicular cleft. He applied a short cast, which he later changed to a temporary splint.
In April, 1980, Gales was examined by Dr. Grunsten who advised him to discontinue the splint and to use his hand and wrist. Dr. Grunsten found that the union was stable so that, in effect, it had healed completely.
Pr. Cenac examined Gales and made x-ray studies during the period of June through September, 1980. After his September, 1980 examination, at which time Gales complained of pain, Dr. Cenac considered Gales capable of returning to work and noted that, if symptoms of tenderness persisted, fusion surgery would be warranted. Dr. Cenac discharged him to return to full duty on September 17, 1980.
On January 15, 1981, Gales was examined by Dr. Adatto. At that time Gales complained of pain in his wrist. Dr. Adatto found that the union was good and that Gales would have a good functional hand as long as he protected it from stressful activity. He agreed with Dr. Cenac that Gales had a 20-25% anatomical disability because of limitation of motion. On December 10, 1981, Gales returned to Dr. Adatto complaining of increased pain to the point that he could not work; x-rays revealed that there was impingement in the area of the graft, meaning that the graft had overgrown the area. Dr. Adatto consulted Dr. Kutz, a specialist in hand surgery in Louisville, Kentucky, who recommended further surgery called “radiostyloi-dectomy” to relieve pain after further examination of the patient. After another examination on March 16, 1982, by Dr. Adatto this procedure was recommended.
After Gales was discharged by Dr. Cenac in September 1980, he returned to Dresser Industries where he was informed that they had no “light work” for him. Being unable to perform his former duties, Gales left Dresser. It was stipulated that Gales was employed at Hunt Correctional Center from May 29, 1981 through August 31, 1981 and worked 40 hours a week at $4.50 per hour, and between May 30, 1979 and the date of trial he worked a total of two weeks for Ted Hicks and Associates (Howard E. Eads) and Borden Chemical Company, and his earnings from those two jobs exceeded the amount he was making while employed by Dresser. Plaintiff received workers’ compensation benefits from the date of the accident until September 17, 1980.
Defendant contends that the disability that is preventing plaintiff from returning to work at this time is a result of other accidents suffered by plaintiff prior and subsequent to May 30, 1979, and some of which were not work-related.
LSA-R.S. 23:1221(3) provides that an employee is deemed partially disabled if he is unable to “perform the duties in which he was customarily engaged when injured or duties of the same or similar character, nature, or description for which he was fitted by education, training, and experience. ..."
An injured employee is not required to work in substantial pain and the trial court’s determination that the employee is unable to return to work due to substantial *227 pain will not be disturbed unless clearly wrong. Patin v. Continental Casualty Company, 424 So.2d 1161 (La.App. 1st Cir.1982), writ denied 429 So.2d 145 (La.1983).
The trial court found that on May 30, 1979, the plaintiff had an accident while working for the defendant, Dresser Industries, Inc., and that the accident took place during the course and scope of plaintiffs employment. That is, plaintiff was cleaning the bunkhouse on the premises of Dresser when a stack of beds collapsed and struck plaintiff on the hand. The court further found that plaintiff had a pre-exist-ing fracture which was asymptomatic at the time of the accident. Dr. Adatto testified that a person could have a fracture and not realize the severity of it and continue to work without treatment. Although the doctors concluded that Gales must have suffered some pain at the time of the previous fracture, it is possible that such pain was not significant. The testimony further revealed that Gales worked for Dresser for about six months loading heavy sacks of drilling mud without complaint. The court found that the accident of May 30, 1979, aggravated the pre-existing injury, and therefore plaintiff is entitled to recover.
The law is well established that an injured employee is not required to work in substantial pain. Patin v. Continental Casualty Company. The court held that the worker is partially disabled when he would experience substantial pain in working in his former occupation even though he could work in other types of jobs without experiencing pain. Plaintiff testified that he is in continuous pain and can not handle heavy objects. Dr. Adatto and Dr. Kutz found clinical evidence of arthritis which can cause the pain plaintiff complains of. Therefore, applying the most recent standard, we conclude that the trial court’s finding that plaintiff is partially disabled is correct. Naquin v. Uniroyal, Inc., 405 So.2d 525 (La.1981).
The case of Culp v. Belden Corporation, 432 So.2d 847 (La.1983), reviewed in detail the basis for determining when a worker is partially disabled due to pain. Citing Wilson v. Ebasco Services, Inc., 393 So.2d 1248 (La.1981), and Lattin v. HICA Corporation, 395 So.2d 690 (La.1981), the Supreme Court stated:
“These cases underscore the fact that in compensation situations where pain is the linchpin to make out a prima facie case for a worker’s classification in the odd lot category, the pain accompanying routine physical tasks and attempts to return to work must be substantial, serious, intense and/or severe.” 432 So.2d at 850.
Applying that test to the present case, the District Court correctly declared plaintiff to be partially disabled. Gales testified that he had to leave his job at Hunt Correctional Center and at Borden because of his pain. He also testified that he had only done work in which he could avoid using his left hand. His testimony is consistent on this point.
Thus, it is clear that the accident of May 30, 1979 aggravated plaintiff’s pre-existing condition, and that the injury suffered on that date caused plaintiff to be partially disabled.
Neither party to this appeal questioned the District Court’s debits and credits, and the plaintiff did not appeal the denial of penalties and attorney’s fees.
For the reasons assigned, the judgment of the District Court is affirmed, at defendant’s costs.
AFFIRMED.